**UNITED STATES of America,**

v.

**Willard HARTSOCK, Defendant**

**No. CR. 02–60–B–S.**

United States District Court,
D. Maine.

March 19, 2003.

§ 921(a)(33)(b)(i) obligation is deemed inadmissible because the United States has failed as a matter of law to generate sufficient evidence that the defendant intelligently and knowingly waived his right to counsel.

Michael D. Love, U.S. Attorney's Office, Bangor, ME, for plaintiff.

Walter F. McKee, Lipman, Katz & McKee, Augusta, ME, for defendant.

---

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, Chief Judge.

The United States Magistrate Judge filed with the Court on January 30, 2003 her Recommended Decision. The Government filed its objections to the Recommended Decision on March 4, 2003 and Defendant filed his response to those objections on March 18, 2003. I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record[1]; I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED*.

2. The conviction offered by the United States in support of its

---

### MEMORANDUM OF DECISION GRANTING MOTION IN LIMINE AND RECOMMENDED DECISION ON MOTION FOR DETERMINATION OF ADMISSIBILITY

KRAVCHUK, United States Magistrate Judge.

Willard Hartsock is facing federal criminal charges under 18 U.S.C. § 922(g)(9) for knowingly possessing firearms affecting interstate commerce while having previously been convicted of a misdemeanor crime of domestic violence. In 1992 Hartsock plead guilty to a domestic assault charge in the State of Maine and did so without counsel. Section 921(a)(33)(B)(i) of title 18 provides that Hartsock is not prosecutable under § 922(g)(9) unless he "knowingly and intelligently waived the right to counsel in the case" and, having been entitled to a jury trial, "knowingly and intelligently waived the right to have the case tried by a jury." Through normal document destruction procedures the state court's records, including the tape recordings of the arraignment and plea and the actual complaint and other court filings, have all been destroyed. The United States claims that during the early phase of its investigation into this charge a federal ATF officer listened to the electronic recording of the plea and would testify that Hartsock had a conversation with the

---

1. I decline to consider the affidavit filed by the Government in it's objection to the Recommended Decision.

judge concerning his consultation with a lawyer prior to coming to court.

The United States is pressing a motion *in limine* and a motion for Rule 104(a) preliminary determination of admissibility. (Docket No. 5.) The prosecution wants an order barring Hartsock from presenting evidence at trial concerning the alleged waiver of his right to counsel and a jury trial at the time of his 1992 plea. Viewing § 921(a)(33)(B)(i) as akin to an affirmative defense to the § 922(g)(9) charge, the United States asks the Court to make the § 921(a)(33)(B)(i) determination by an evidentiary standard that places upon Hartsock the burden of producing evidence that he did not waive counsel by something more than a scintilla but shy of a preponderance of the evidence. Once Hartsock produces such evidence, the United States would then accept that it would have the burden of persuading the court of waiver, meaning that the issue of waiver would be determined by the judge. Hartsock contends that the waiver determinations of § 921(a)(33)(B)(i) are elements of the crime that must be found by the jury by proof beyond a reasonable doubt.

After hearing the argument of counsel and taking a proffer by the United States of what evidence it would introduce vis-à-vis Hartsock's domestic assault plea, and purposefully not requiring Hartsock to provide any evidentiary proffer, I now **GRANT** the United States' motion *in limine* and preclude Hartsock from introducing any evidence at trial concerning whether, in connection with the misdemeanor conviction referred to in Count One of the Indictment in this case, Hartsock knowingly and intelligently waived the right to either counsel or a jury trial. On the motion for a Rule 104(a) preliminary determination of admissibility, I recommend that the court rule the proffered conviction inadmissible. I frame the sec-

ond part of this memorandum of decision as a recommended decision subject to de novo review because I recognize that it is case dispositive in this instance.

### Discussion

### The Motion in Limine

**A. Does § 921(a)(33)(B)(i) Present a Question of Law for the Court or a Question of Fact for the Jury?**

The meaning of a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9) is fully defined under 18 U.S.C. § 921:

(33)(A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(**aa**) the case was tried by a jury, or

(**bb**) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(**ii**) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

[1] So in original. No subparagraph (C) was enacted in subsec. (a)(33).

18 U.S.C. § 921(a)(33) (footnote in original).

The United States would have the court characterize § 921(a)(33)(B)(i) as an affirmative defense in the same fashion as § 921(a)(20) restoration of civil rights exception to § 922(g)(1)[1] predicate convictions has been treated. It relies on First Circuit reasoning that is conceivably applicable to the present dispute when it said of § 921(a)(20):

> While neither § 921(a)(20) nor § 922(g)(1) explicitly describes the role that the § 921(a)(20) definition should

play or specifies who must initially raise or ultimately bear the burden of proof on the issue of the predicate conviction's continuing vitality, we conclude that § 921(a)(20) is merely a legal definition for the phrase "conviction for a term exceeding one year" in § 922(g)(1). Indeed, the title to 18 U.S.C. § 921 is "Definitions." Furthermore, § 921(a)(20) begins with the words "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include," and is followed by two exceptions. Thus, § 921(a)(20) serves to narrow the class of prior convictions down to a smaller class of convictions that may serve as predicate convictions under § 922(g)(1). To treat § 921(a)(20) as a legal definition accords with the approaches taken explicitly by two other circuits, see *United States v. Jackson*, 57 F.3d 1012, 1016 (11th Cir.1995); *Flower*, 29 F.3d at 534; *United States v. Clark*, 993 F.2d 402, 406 (4th Cir.1993), and implicitly by several others, see *United States v. Frushon*, 10 F.3d 663, 665–66 (9th Cir.1993); *Martin v. United States*, 989 F.2d 271, 273 (8th Cir.), *cert. denied*, 510 U.S. 979, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993); *United States v. Cassidy*, 899 F.2d 543, 545 (6th Cir.1990).

We are persuaded by the approach of *United States v. Flower*. The significance of § 921(a)(20)'s definitional nature is that the trial judge bears the

---

1. Subsection (a)(20) reads in full:

(**20**) The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(**A**) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(**B**) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(20).

responsibility of determining as a matter of law whether a prior conviction is admissible in a § 922(g)(1) case. *Flower*, 29 F.3d at 535. Under Bartelho's proposed rule, the government would be required to refute every possibility that criminal defendants have had their prior convictions nullified or their civil rights restored. Rather than require the government to show a negative proposition, we reject Bartelho's interpretation. It is certainly much easier for criminal defendants to raise the issue of whether their prior convictions have been nullified or their civil rights otherwise restored. *Id.*

A claim of restoration of civil rights is in the nature of an affirmative defense. As a result, once a prior felony conviction and corresponding loss of civil rights is proven by the government, as with any other factual condition, the presumption is that that condition remains. *See Jackson*, 57 F.3d at 1016 ("[W]here affirmative defenses are created through statutory exceptions, the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue.") (quoting *United States v. Laroche*, 723 F.2d 1541, 1543 (11th Cir.), *cert. denied*, 467 U.S. 1245, 104 S.Ct. 3521, 82 L.Ed.2d 829 (1984)). It is up to the defendant to raise the issue and produce evidence showing that changed circumstances make the original condition inapplicable. *See Jackson*, 57 F.3d at 1017; *Flower*, 29 F.3d at 535. Defendant has not done so here.

Thus, upon *de novo* review, *see, e.g.*, *United States v. Three Juveniles*, 61 F.3d 86, 87 (1st Cir.1995) (reviewing *de novo* issues of interpretation of federal criminal statute), we find no error of law, since the government was not required to show the validity of his past conviction in order to prove a violation of § 922(g)(1).

*United States v. Bartelho*, 71 F.3d 436, 440–41 (1st Cir.1995) (footnote omitted).

There are a few federal courts that have been called on to characterize the § 921(a)(33)(B) inquiry. In *United States v. Akins* the Ninth Circuit addressed whether the defendant knowingly and intelligently waived the right to counsel for purposes of § 922(g)(9) after the District Court had denied a motion to dismiss the indictment on this ground and the jury convicted the defendant. 276 F.3d 1141 (9th Cir.2002). It dubbed § 921(a)(33)(B)(i) "a statutory defense," *id.* at 1145 and, relying on the *Bartelho's* and *Flower's* discussion of § 921(a)(20), reasoned, that "[b]ecause § 921(a)(33)(B)(i)(I) is a legal definition, its application presents a question of law to be decided by the trial judge." *Id.* at 1146.

The Eighth Circuit has also approached this question as one of law to be answered by the Court rather than the jury. In *United States v. Smith*, 171 F.3d 617, 622 (8th Cir.1999) the Court of Appeals concluded "as a matter of law" that the record for the state court domestic violence conviction indicated that there was a voluntary and knowing waiver of right to counsel. This determination was made in the context of a direct appeal of a conditional § 922(g)(9) guilty plea in which defendant challenged the District Court's denial of his motion to dismiss the indictment that raised, among other things, the application of § 921(a)(33)(B)(i). *Id.*

Other than *Akins* and *Smith* I unearthed only three other District Court decisions dealing in any meaningful way with the question of how to go about the § 921(a)(33)(B)(i) inquiry. In *United States v. Pfeifer*, 206 F.Supp.2d1002 (D.S.D.2002) a District Court within the

Eighth Circuit was called upon to rule on a defendant's motion to dismiss the criminal case [2] premised on § 921(a)(33)(B)(i) challenge to a state simple assault conviction. *Id.* at 1004–05. In that case the parties stipulated that the Magistrate Judge could receive and consider the records pertaining to the state conviction and the court entertained "lengthy oral argument." 206 F.Supp.2d at 1005. The court determined as a matter of law that the colloquy between the defendant and the court established that Pfeifer knowingly and intelligently waived his right to counsel and his right to a jury trial at the time of his state plea of guilty to the domestic assault charge. *Id.* at 1007.

A district court in Utah (within the Tenth Circuit) that penned *United States v. Thomson*, 134 F.Supp 2d 1227 (D.Ut. 2001) was confronted with a situation in which the United States and the defendant assumed reverse roles to the parties' position here. In proceedings addressing the defendant's motion to dismiss the indictment the defendant argued that the § 921(a)(33)(B) question of waiver of counsel vis-à-vis his prior conviction should be treated as a preliminary question under Federal Rule of Evidence 104 and decided by the court. *Id.* at 1230. The United States claimed it was a question of fact and that the defendant could not challenge whether or not the United States could meet its burden of proof at a *pretrial* hearing. *Id.* Without looking to other cases discussing the definitional provision the court relied on cases in which the federal criminal defendant was challenging the constitutionality of his waiver on a federal criminal count in a direct appeal of his conviction. Following this track the

court viewed the determination of whether the § 922(9)(g) defendant had knowingly waived his right to counsel at the time of his state domestic assault conviction as a mixed question of law and fact. *Id.* at 1231. The court drew from language in *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) providing that a trial judge accepting a plea must make a "penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 134 F.Supp.2d at 1231. It then concluded: "that because of the intensive factual and legal examination required to determine whether Defendant knowingly and intelligently waived his right to counsel when he plead guilty to battery—and therefore whether Defendant's prior conviction is admissible under 18 U.S.C. § 921(a)(33)(B)(i)(I)-the court should conduct such determination prior to trial." *Id.*

The third district court decision, *United States v. Bethurum*, 213 F.Supp 2d. 679 (N.D.Tex.2002), hails from the Northern District of Texas and concluded that the definitional section of § 921(a)(33)(B)(i) is an element of the § 922(g)(9) offense. I discuss this decision at some length as it is the sole published articulation of the theory that § 921(a)(33)(B)(i) contains elements that must be found by the jury beyond a reasonable doubt. It is also of interest because evidence pertaining to the elements of § 921(a)(33)(B)(i) was presented to the jury.

In *Bethurum* the evidence concerning the predicate state court assault guilty plea introduced at the federal criminal trial included a signed waiver of appointment of attorney and waiver of jury trial and a

---

2. The defendant moved in the alternative to suppress all evidence relating to his assault conviction and his unsuccessful attempt to expunge it. 206 F.Supp.2d at 1005. With the United States moving here, Hartsock, in contrast, is seeking to get evidence pertaining to his domestic assault in front of the jury.

signed waiver of jury trial and ten days to prepare for trial; a stipulation (read to the jury) between the defendant and the state that provided that the federal defendant was the same state defendant identified in the above records; and the testimony of the presiding state court judge and the district attorney's office practices in dealing with unrepresented defendants. *Id.* at 681–83. The defendant made a motion for acquittal at the close of the government's case on the grounds that he had not knowingly and intelligently waived his rights to be represented in the state assault charge. *Id.* at 683. He argued that the state judge had no specific recollection of the defendant and certainly did not advise him of his vulnerability of facing future federal charges if he possessed a firearm. *Id.* The trial court deferred ruling on the motion. After the defendant presented his case, he renewed his motion for judgment of acquittal and the court denied the motion. *Id.* at 684. The jury convicted the defendant (apparently involved in the otherwise legal sales of firearms) on multiple § 922(g)(9) counts. (*Id.*)

After trial the defendant pressed the court to enter judgment in his favor on the reserved motion for acquittal at the close of the government's case, reconsider the denial of his motions for acquittal at the close of evidence, and moved to set aside the jury's verdict and enter a judgment of acquittal. (*Id.*) The court granted judgment for the defendant on the reserved motion for acquittal, concluding that based on the evidence before the jury at the

close of the government's case no reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. *Id.* at 685, 691.

The court reasoned that the § 921(a)(33) definition of § 922(g)(9)'s "misdemeanor crime of domestic violence" was Congress's effort to make it clear that an individual could not be convicted for the § 922(g)(9) offense "*unless* the accused was represented in the misdemeanor action by counsel or 'knowingly and intelligently waived the right to counsel in the case' *and*, if the accused was entitled to a jury trial in the misdemeanor action, his or her case was either tried to a jury or he or she 'knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.'" *Id.* at 686 (footnotes omitted).[3] With respect to the § 921(a)(33)(B)(ii) expungement/pardon exception to § 922(g)(9) prosecution, the court described this provision as an exception for which the defendant would probably have the burden of production, because of the operation of the word "if" as opposed to "unless" after the phrase, "A person shall not be considered to have been convicted of such an offense for purposes of this chapter." *Id.* Because it considered § 921(a)(33)(B)(i) to be an element of the § 922(g)(9) offense the court concluded, "the government had the obligation to adduce evidence as part of its case in chief that would have allowed a reasonable jury to find that [sic] the exis-

---

3. The court equated the use of "unless" in § 921(a)(33)(B) to the use of "unless" in Article III, section 3 of the United States Constitution which provides: "No Person shall be convicted of Treason *unless* on the Testimony of two Witnesses to the same overt Act, or on the Confession in open Court." *Id.* at 686 n. 2. It reasoned that if "the use of the word 'unless' in 921(a)(33)(B)(i) creates exceptions on which a defendant has the burden of proof in order to avoid conviction, one could just as reasonably contend that, to avoid a conviction of treason, the accused, if he or she did not confess in open court, would have the burden to prove that testimony could not be provided by two witnesses to the overt act of treason of which he or she was accused." *Id.*

tence of those factors beyond a reasonable doubt." *Id.*

At the *Bethurum* trial the jury was instructed on what a knowing and intelligent waiver would look like in the state court proceedings. In that instruction the judge cautioned as follows:

I'm going to define for you what the words "knowingly" and "intelligently" mean in the sense they're used in these instructions.

The words "knowingly and intelligently," as they have just been used, mean that the defendant *knew and understood, before he waived his right to counsel and his right to have his case tried to a jury, all material consequences of his waivers and that he made an intelligent decision to forego his right to counsel and to a jury trial with full knowledge of those consequences.*

In other words, as part of its burden in this case, the government must also prove beyond a reasonable doubt that when the defendant waived his right to counsel and his right to have his case tried to a jury he knew of the consequences of those waivers and made the intelligent decision to make the waivers with full knowledge of those consequences. If the government fails to make that proof, you must find the defendant not guilty.

*Id.* at 689 (citing trial transcripts and adding emphasis). The federal district court, in setting aside the jury verdict, decided that a jury "guided by such an instruction could not have found defendant guilty if its deliberations were based on the evidence that existed when the government rested." *Id.* at 689. It concluded:

There was no direct evidence that defendant had knowledge that the state court conviction to which his waivers were calculated to lead, and did lead, could result in defendant's loss of his right to possess a firearm, nor was there evidence from which the jury could infer that defendant had that knowledge.

*Id.* at 689–90. The court found buttress for this conclusion in the assumption underlying the proceedings that the defendant operated a gun shop, although there was no direct evidence in the government's case of this occupation. *Id.* at 690; *see also id.* at 688 ("This court disagrees with the government's contention that defendant could knowingly and intelligently waive his right to counsel and his right to have his state court case tried by a jury (by entering a plea of guilty), within the contemplation of § 921(a)(33)(B)(i), without knowing that a consequence of his waivers could be the deprivation of his right in the future to possess a firearm.").[4]

---

4. Tethering its reflections to the Second Amendment rights, *Bethurum* also states that when Congress enacted § 921(a)(33)(B)(i), "it undoubtedly had in mind that one of the things that would have to be known to the accused for the waiver factors to exist would be that thereafter his or her possession of a firearm would subject him or her to a felony offense if a misdemeanor conviction were to follow from the waivers." *Id.* at 688. The court felt that "Congress presumably recognized that the offense it created by § 922(g)(9) was a particularly onerous one for a person convicted of a misdemeanor in connection with a domestic altercation." In the court's view,

It is common knowledge that accusations of domestic abuse often are lightly made, with skimpy or no substantive basis, during the give and take of divorce litigation and other forms of spousal, or domestic partner, disputes, such as child custody proceedings. And, it is common knowledge that spouses or domestic partners, without giving significant consideration to the consequences of doing so, often cave in with a plea of guilty to those sorts of domestic relations accusations rather than to devote the time and resources to a defense of the charges.

## B. How is the § 921(a)(33)(B)(i) Determination Made?

After my review of this relatively small universe of cases addressing § 921(a)(33)(B)(i) and conducting a hearing on the concerns generated by this provision I think it is safe to say that the parties and I agree that there is much at stake in resolving this matter and that we proceed, if not in entirely uncharted waters, in waters that have not been adequately mapped. Many troubling concerns have been articulated. Two stand out. On the one hand, if the Court treats the § 921(a)(33)(B)(i) inquiry as one that is made by the Court, how does one assign burdens and conduct pretrial hearings on potentially complex evidentiary questions? On the other hand, Hartsock's contention that the § 912(a)(33)(B)(1) inquiry is an element of the offense to be proven beyond a reasonable doubt would mean that in all such prosecutions a federal jury would be charged with essentially revisiting historical facts surrounding a state court conviction and ultimately passing on the validity of apparently final state court judgments.

Treating the waiver issues relating to the prior conviction as an affirmative defense a la *Bartelho* does not comport well with the statutory framework of § 921(a)(33)(B)(i). Clearly the claim of restoration of civil rights discussed in *Bartelho* is an affirmative defense also available to Hartsock under § 921(a)(33)(B)(ii), but he has not raised that claim. If he were to do so, established precedent would clearly place the burden of production on him. On this point, and perhaps on this point alone, I agree with the *Bethurum* court. If the affirmative defense analogy does not solve the § 921(a)(33)(B) puzzle, neither does treating the intentional and knowing waiver of two specific rights in state court as a question of fact to be determined beyond a reasonable doubt at trial. Such an approach simply does not comport with established Supreme Court precedent and other statutory provisions.

Prior state court convictions have relevance in federal prosecutions in two ways: they can be used as predicate offenses, forming an element of the federal criminal charge, or they can be used for sentence enhancement purposes. The fact of a prior conviction has historically been given unique status, whether the prior conviction relates to a sentence enhancement or to a predicate offense that must be established

*Id.* at 688. In a footnote to this passage it further waxed:

> The level of seriousness with which accusations of domestic violence are taken in the divorce litigation community is reflected by the fact that often the somewhat standard forms used for the bringing of a divorce action include allegations of domestic violence, or threatened domestic violence, as grounds for divorce, along with the request for injunctive relief to prevent the nonfiling spouse from committing acts of violence against the filing spouse. And, those kinds of injunctions routinely are given by domestic relations courts based on the bare allegations of the filing spouse.

*Id.* at 688 n. 5.

The court described "the anti-sporting concept of justice," in which a innocent man pressured by the prosecutor may waive trial and plead guilty in order to avoid publicity, secure a sentencing break, or simply put the matter to rest. *Id.* at 689. It then stated:

> Congress must have had in mind the anti-sporting concept of justice when it put the waiver proof requirements in the definition. Undoubtedly, Congress was particularly concerned that an accused, with legitimate reason to question guilt, in a so-called domestic violence case would later unfairly be subjected to a federal felony offense because of possessing a firearm even though the accused had no knowledge of that risk when he or she earlier waived the right to counsel and trial by jury by pleading guilty to the domestic abuse offense.

*Id.*

to make out a criminal offense. The Court held in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) that even if the petitioner's state conviction was subject to collateral attack as constitutionally infirm under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),[5] it could be used as a predicate felony offense for federal firearms charges. Noting that the petitioner could have challenged the predicate conviction in the state court before obtaining his firearm, *id.* at 64, 68, 100 S.Ct. 915, the Court held "that the firearms prosecution does not open the predicate conviction to a new form of collateral attack," *id.* at 67, 100 S.Ct. 915. The court also remarked that it had never suggested that an uncounseled conviction was invalid for all purposes. *Id.* at 66–67, 100 S.Ct. 915. (Keep in mind, of course, Congress has expressly provided in § 921(a)(33)(B)(i) that they are invalid for purposes of § 922(g)(9). Thus *Lewis* does not provide the definitive departure point for this analysis).

On the other hand, the Supreme Court and Congress have historically treated prior convictions used for sentence enhancement purposes differently than those used for predicate offenses. Prior state convictions used for sentence enhancement come engrafted with what is known as the *"Gideon* exception" The Supreme Court's analysis in *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) is instructive. Therein it examined the 18 U.S.C. § 924(e) enhancement of 18 U.S.C. § 922(g)(1) sentences which, like its sec-

tion-mate § 922(g)(9), includes a prior conviction as part of the definition of the federal firearm crime. The Court delimited the avenues for challenging the constitutionality of prior convictions to the "unique constitutional defect" that arises when the *Gideon* right to counsel is violated. 511 U.S. at 496, 114 S.Ct. 1732. Attacks claiming the denial of the effective assistance of counsel, that a guilty plea was not knowing and intelligent, and an inadequate advisement of a right of opting for a "stipulated facts" trial, were not constitutional violations that rose to "the level of a jurisdictional defect resulting from the failure to appoint counsel at all." *Id.* at 496, 114 S.Ct. 1732.

The Court observed:

Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. As we have explained, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our proce-

---

**5.** In *Gideon* the United States Supreme Court addressed a habeas corpus opinion by the Florida Supreme Court in which the petitioner argued he had a right to counsel under the Sixth Amendment of the United States Constitution when defending a state felony charge. Overruling *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), a case it

described as "nearly indistinguishable," 372 U.S. at 339, 83 S.Ct. 792, the Court held the Fourteenth Amendment required states to provide (at least felony) defendants with an attorney and described the right as "fundamental and essential to fair trials," *id.* at 344, 83 S.Ct. 792.

dures" and inevitably delay and impair the orderly administration of justice. *United States v. Addonizio*, 442 U.S. 178, 184, n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). We later noted in *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), that principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court "to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." *Id.,* at 30, 113 S.Ct. 517. These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (footnote omitted).

*Id.* at 496–97, 114 S.Ct. 1732.

In *Daniels v. United States,* 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), Justice O'Connor reiterated the existence of the *Gideon* exception, that " 'the failure to appoint counsel for an indigent defendant was a unique constitutional defect,' " *id.* at 378, 121 S.Ct. 1578 (quoting *Custis,* 511 U.S. at 496, 114 S.Ct. 1732), but extended the ban on resolving non-*Gideon*-type constitutional attacks on otherwise valid state court convictions to 28 U.S.C. § 2255 motions that defendants brought following their federal convictions. A defendant must return to the state court to obtain relief from a conviction that was imposed in a constitutionally invalid fashion or obtain relief in federal court pursuant to the strictures of 28 U.S.C. § 2254.

*Id.* at 382, 121 S.Ct. 1578. Two considerations supported the Court's conclusion: "ease of administration and the interest in promoting the finality of judgments." *Id.* at 378, 121 S.Ct. 1578. Just as in *Custis,* the *Daniels* Court rejected the notion that federal courts could successfully rummage through decades-old state court records and transcripts to try to ascertain the merits of stale constitutional claims. *Id.* at 379, 121 S.Ct. 1578.

Against this constitutional backdrop, Congress enacted § 921(a)(33)(B)(i). The statute not only incorporates something like the *Gideon* exception to prohibit the use of an uncounseled/nonjury verdict conviction as a predicate offense to a charge that is essentially a status offense; it also provides a statutory mechanism for defendants to mount a limited challenge to otherwise valid state court convictions. The grounds for that challenge are limited to the waiver of the right to counsel and the waiver of the right to a jury trial in those instances where a right to jury trial attaches. Presumably a defendant cannot mount some other constitutional challenge in this context, but it at least appears that he or she can challenge the constitutionality of the state conviction vis-à-vis the validity of any waivers on the grounds enumerated in the statute.

■ I am satisfied that 18 U.S.C. § 921(a)(33)(B) is a definitional section and that while subsection (a)(33)(B)(ii) contains language analogous to the provision found by the First Circuit to be an affirmative defense under *Bartelho,* the statutory language relating to counsel, jury trial, and waiver under § 921(a)(33)(B)(i) is *sui generis.* In my view the finding under subsection (a)(33)(B)(i) requires "the application of constitutional principles to the facts as found" and the historical facts will in the vast majority of cases be found in the state court records. *See Brewer v. Williams,* 430 U.S. 387, 396, 97 S.Ct. 1232,

51 L.Ed.2d 424 (1977). That task, of necessity, falls upon the court. It is obvious to me that the United States does not have to prove beyond a reasonable doubt that a jury trial has been held or that counsel has represented the defendant in state court in the same way that it has to prove that a firearm was manufactured and transported in interstate commerce.[6] Those are matters that will appear of record and can be easily ascertained by the trial judge's review of the state court record. While the question of whether those rights have been intelligently and knowingly waived may be more fact intensive, the ultimate resolution of the question still involves a question of law that must be determined by the judge. My conclusion is that the better reasoned cases properly concluded that the question of waiver is a question of law for the court and the United States' motion *in limine* is **GRANTED**. The defendant is precluded from presenting evidence on this issue to the jury.

## The Motion for a Rule 104 Preliminary Determination of Admissibility

Having concluded that § 921(a)(33)(B)(i) sets forth an inquiry for the Court and not

---

**6.** I say this with a relative degree of confidence, in spite of *Bethurum's* holding to the contrary. The other courts considering the issue have all treated the question as one to be determined in a preliminary fashion by the court. If it is an element of the offense the United States would have to prove either that there had been a waiver or not. I note that the First Circuit has already said that the question of whether or not a state court assault conviction is a crime which threatens or uses physical force as required by this definitional language is a question of law that is determined by the court and that Maine's general purpose assault statute meets that criterion. *United States v. Nason*, 269 F.3d 10 (1st Cir.2001). However, this "definitional" section does contain an element of the offense that must be proven by the United States to the factfinder at trial beyond a reasonable doubt or, at least, there has been movement in that direction with respect to 18 U.S.C. § 921(a)(33)(A)(ii)'s victim component. *See United States v. Meade*, 175 F.3d 215, 221 n. 1 (1st Cir.1999) (rejecting an argument that "unless relationship status is deemed a part of the formal definition of the predicate offense, factfinding will be a 'nightmare' "—describing it as "a scare tactic[ ]" a "shark [with] no teeth"—observing that federal criminal trials "typically involve proof and differential factfinding, and the issue of relationship status is by no means outside a jury's competence"); *United States v. Costigan*, Crim. 00–09–B–H, 2000 WL 898455, at *2–3 (D.Me. June 16, 2000) (Hornby, Chief J.) (relying on Meade, suggesting in dicta that the historical fact of whether or not the prior conviction involved "a person who is cohabiting with or has co-habited with the victim as a spouse" is a question of fact to be proven by the United States and submitted to the jury), *summarily aff'd unpublished per curiam*, 8 Fed.Appx. 2, 2001 WL 535734 (1st Cir.2001). *See also United States v. Roy*, 114 F.Supp.2d 1, 2 (D.Me.2000) (Hornby, Chief J.) (reiterating, in dicta, the belief that the factfinder at a federal trial now makes the § 921(a)(33)(A)(ii) victim status factual determination). (Apparently at least one Judge in this District feels that this passage in *Meade* has teeth, though the baring of the teeth in front of a federal jury was left for another day as *Costigan* was a bench trial.)

It seems to me, however, that the portion of the statute containing "definitional" language pertaining to the domestic status of the victim and defendant in the prior state court proceeding is decidedly more fact driven than these other issues raised by the definitional language in § 921(a)(33). Furthermore, the principle offense in § 922(g) requires a conviction based upon a predicate offense of a crime of *domestic* violence as an element of the offense. Since the court has endorsed the use of general purpose assault convictions as predicate offenses in these cases, the fact of the status of the parties must be proven beyond a reasonable doubt in the context of the federal prosecution because that fact has never been previously submitted to any factfinder whether the conviction was by trial or by plea. By contrast, in any case where a jury trial was authorized or court appointed counsel mandated, the state sentencing judge will of necessity be required to make a determination of waiver under federal constitutional principles.

the jury, the question remains on how to proceed procedurally, how to assign burdens, how to generate a record and ultimately whether the Court is satisfied that the conviction offered by the United States meets the statutory requirements.

## A. What are the Appropriate Models for a Procedural Framework?

Once more stepping back from the cases that directly discuss the § 921(a)(33)(B)(i) concerns, it is helpful to revisit the legacy of some of the cases discussing the waiver of constitutional rights. It is not only helpful, but necessary because I conclude that I must view this dispute over how to allocate the burdens of production under § 921(a)(33)(B)(i) at least partially through the lens of settled precedent that caution federal courts that they cannot willy-nilly delve into the historical facts underpinning final state court criminal convictions to determine if they are constitutionally valid in the view of a federal judge or jury. Against the carefully evolved *Custis /Daniels* approach that admits of some administratively uncomplicated *Gideon* exception to the presumptive finality of any state court judgment, Congress has interjected a *statutory* requirement that could potentially open the door to lengthy pretrial evidentiary proceedings challenging otherwise valid state court judgments.

*Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) examined the indicia of an intelligent and knowing waiver of the assistance of counsel. "Presuming waiver from a silent record is impermissible," the Court concluded. *Id* at 516, 82 S.Ct. 884. "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Id.* "Anything less" the Court stated, "is not waiver." *Id.*

With this principal established in the context of contemporaneous attacks on a conviction, what happens when a conviction to which the defendant plead guilty is challenged in the context of its use as a predicate offense or a sentence enhancing factor in a subsequent federal charge?

Although not precisely analogous to the § 922(g)(9)/ § 921(a)(33)(B) scheme, the Supreme Court has considered the constitutionality of a state's own use of a prior conviction in accordance with a state statute governing the validity of waivers of federal constitutional rights during prior proceedings. Kentucky's persistent offender statute and the State's corresponding "burden-of-proof scheme" for attacking prior convictions generated the question addressed by the Court in *Parke v. Raley,* 506 U.S. 20, 22–23, 28, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). The Court concluded that when a transcript of the prior plea proceeding is unavailable it was not a *constitutional* requirement that the government carry the entire burden of proof by clear and convincing evidence. *Id.* at 22–23, 113 S.Ct. 517. Kentucky's scheme was as follows:

> When a defendant challenges a previous conviction through a suppression motion, the Commonwealth must prove the existence of the judgment on which it intends to rely. Once this is done, a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. If the defendant refutes the presumption of regularity, the burden shifts back to the government affirmatively to show that the underlying judgment was entered in a manner that did, in fact, protect the defendant's rights.

*Id.* at 24, 113 S.Ct. 517.

The *Parke* Court recognized that in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct.

1709, 23 L.Ed.2d 274 (1969), it reached the conclusion that the same standard that the *Carnley* Court applied with respect to the waiver of right to counsel must be applied to the determination of whether the guilty plea is voluntarily made and that there was a presumption of invalidity in the absence of a record affirmatively showing that the plea was knowing and voluntary. *Id.* at 28–29, 113 S.Ct. 517. Noting that the defendant had not before challenged the prior, now final convictions whereas *Boykin* was such a challenge on a direct appeal, the Court reflected: "To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Id.* at 29, 113 S.Ct. 517 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also id.* at 30, 113 S.Ct. 517 ("Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments."). "On collateral review," the Court stated, "it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." *Id.* at 30, 113 S.Ct. 517. Rather, in these circumstances, it is permissible to at least initially presume the validity of a final judgment of conviction. *Id.*[7]

Also of note, the *Parke* Court rejected an argument that placing a burden on the defendant threatened to undercut this Fifth and Sixth Amendment rights, stating that its precedents "make clear … that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Id.* at 31, 113 S.Ct. 517. Acknowledging the "serious practical difficulties" confronting "any party assigned an evidentiary burden in such circumstances," *id.* at 31–32, 113 S.Ct. 517, the Court explained:

> [T]he government will not invariably, or perhaps even usually, have superior access to evidence. Indeed, when the plea was entered in another jurisdiction, the defendant may be the only witness who was actually present at the earlier proceeding. If raising a *Boykin* claim and pointing to a missing record suffices to place the entire burden of proof on the government, the prosecution will not infrequently be forced to expend considerable effort and expense attempting to reconstruct records from farflung States where procedures are unfamiliar and memories unreliable. To the extent that the government fails to carry its burden due to the staleness or unavailability of evidence, of course, its legitimate interest in differentially punishing repeat offenders is compromised. In light of the relative positions of the defendant and the prosecution in recidivism proceedings, we cannot say that it is fundamentally unfair to place at least a burden of production on the defendant.

**7.** In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) the Court addressed a situation in which the defendant, charged under the Texas recidivist statute, objected to the admission of his prior conviction on the ground that he was not represented by counsel and had not waived his right.

The United States Supreme Court held that the certified records of a conviction by Tennessee facially raised a "presumption that petitioner was denied his right to counsel," *id.* at 114, 88 S.Ct. 258, and the Court concluded that the conviction was "void" under *Gideon, id.* at 114–15, 88 S.Ct. 258.

*Id.* at 32, 113 S.Ct. 517. It concluded by analogizing the Kentucky scheme with federal criminal laws and sentencing procedures—to wit, 18 U.S.C. § 924(e) of the Armed Career Criminal Act, the calculation of criminal history points under the United States Sentencing Guidelines, and the 21 U.S.C. § 851(c)(2) sentencing enhancement—vis-à-vis which the Courts of Appeals or Congress have placed on the defendant the entire burden of proving the invalidity of a prior state conviction. *Id.* at 33–34, 113 S.Ct. 517.

I conclude with some confidence that it is inappropriate to read § 922(a)(33)(B)(i)

in a vacuum without considering all of this prior counsel from the Supreme Court. Congress has expressly narrowed the class of individuals for whom a § 922(g)(9) prosecution may arise to those defendants who were represented by counsel or who knowingly and intelligently waived the right to counsel in the case and who had a jury trial or knowingly and intelligently waived that right (if there was one available under state law). That means that the federal court will necessarily be called upon to pass on the constitutional sufficiency of a final state court judgment in some instances.[8]

---

**8.** In rejecting this very conclusion the District Court in *Bethurum* reasoned:

> From the outset, the government has sought to frame the issue in terms of whether defendant's state court misdemeanor conviction was valid. That is not the issue at all. Indeed, as a general proposition a defendant would not be permitted to challenge the validity of his or her predicate conviction. *See Lewis v. United States*, 445 U.S. 55, 67–68, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Nor is the court confronted with the legal issue of whether the predicate offense qualifies as such under the laws of the State of Texas, which is the issue the Fifth Circuit confronted in *United States v. Daugherty*, 264 F.3d 513, 514 (5th Cir.2001), *cert. denied*, 534 U.S. 1150, 122 S.Ct. 1113, 151 L.Ed.2d 1007 (2002). State law does not enter the picture here. Rather, the question is whether, without regard to the validity, *vel non*, of the misdemeanor conviction, there was sufficient evidence of the elements of the offense set forth in § 921(a)(33)(B)(i) to withstand a Rule 29(a) motion made when the government rested. Validity of the state court conviction could well become an issue if a defendant were to urge the exception contemplated by § 921(a)(33)(B)(ii). In contrast, a person can have a perfectly valid misdemeanor conviction but not be guilty of the offense in question because of the government's failure to prove beyond a reasonable doubt that the defendant waived counsel and trial by jury by the standards Congress fixed by § 921(a)(33)(B)(i).

213 F.Supp.2d at 686–87 (record references omitted). The court also noted: "To the extent that Congress considered the validity of the state court conviction to bear on guilt of the offense in question, it included the exception on that subject that is found in § 921(a)(33)(B)(II)." *Id.* at 687 n. 3.

One can follow this approach in the situation where a state grants a right to jury trial in a context in which counsel and jury rights may not be constitutionally mandated. The federal prosecutor has to show that there was an intelligent and knowing waiver of the right under the statute, a burden that has nothing to do with the constitutional validity of the state court conviction.

Ultimately, though, I cannot credit this reasoning even though it has some superficial appeal. I do note that in the State of Maine pursuant to Rule 44(a) of the Maine Rules of Criminal Procedure it would be possible to have a constitutionally valid conviction for misdemeanor domestic assault wherein no jail sentence was imposed and the right to counsel was never waived. It appears that the United States could use that conviction as a predicate offense because the statute speaks of the knowing and intelligent waiver of the "right to counsel in the case" and if no such constitutional or statutory right exists, there is nothing to waive. However, in the vast majority of cases where a jail sentence or a suspended jail sentence with probation is imposed, the United States' failure to demonstrate an intelligent and knowing waiver of the right to counsel will necessarily result in the federal court concluding that the conviction is invalid, at least for purposes of a

Therefore, I think it is fair to read *Parke* as permitting the court to fashion a reasonable procedure for addressing the question, one that can put some onus on the defendant to produce evidence that his waiver of counsel and/or a jury was not knowing and intelligent. However, under § 922(a)(33)(B) the United States must prove in the first instance not only existence of the conviction as was statutorily mandated by Kentucky in the *Parke* case, but also in the first instance show the existence of an intelligent and knowing waiver of the right to counsel and a jury trial as has been mandated by Congress. Only then does the United States have a presumptively valid conviction that meets the statutory definition.

### B. What Sort of Procedure Should the Court Adopt to Make its Preliminary § 921(a)(33)(B)(i) Determination of Admissibility?

While delving into Congressional intent is not the purpose of this recommended decision, it is obvious from the language of the statute that Congress did not intend for every person convicted of a misdemeanor domestic assault to be guilty of a federal firearms offense. The universe of potential defendants has been substantially

reduced by incorporating counsel/jury trial waiver provisions into the predicate offense. It is not a status crime in the same sense that possession of a firearm by a felon is a status crime regardless of whether the original felony conviction was counseled or not. █

█ However, under the *Parke* paradigm the United States should not be limited to a stale or nonexistent record in meeting its burden but should be allowed to present any reliable evidence available to establish waiver. Once the United States has presented sufficient evidence to demonstrate an intelligent and knowing waiver, the burden would be on the defendant to demonstrate that the presumptively valid conviction contained an infirmity pertaining, solely, to his waiver of counsel or a jury. That approach would be consistent with existing precedent and also with the statutory language of § 921(a)(33)(B)(i).[9]

With respect to the federal Constitutional inquiry into whether there is a waiver the Supreme Court has indicated that it is incumbent on the government to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82

§ 922(g) prosecution, just as the federal court would conclude that a *Gideon* exception conviction was invalid for sentence enhancement purposes in other contexts. If the ultimate burden of persuasion on the question of waiver rests with the United States, a point not disputed by the United States in this case, it inevitably follows that there will be frontal federal assaults on otherwise valid state court convictions.

9. Courts have traditionally made determinations about the adequacy of waivers on record evidence and proffers by the government in the context of direct appeals and post-conviction proceedings. By requiring the United States to proceed first by way of record evidence and proffer, full blown evidentiary hearings can be minimized. Before the de-

fendant would be entitled to such an evidentiary hearing, he could very well be required to make a showing under oath by way of affidavit that there are serious facts in dispute that might undermine the credibility of the United States' record evidence and proffer. The United States' showing must be such that a defendant's self-serving statement that he did not understand his rights would be insufficient to trigger a full blown evidentiary hearing on the issue. However, I do not reach those issues in this case because I find the United States has not presented sufficient facts to support a finding of waiver. If the Court believes that it has, the Court might choose such an approach before holding an evidentiary hearing.

L.Ed. 1461 (1938). The First Circuit has recently summarized the non-formulaic nature of the inquiry for waiver of right to counsel:

It is well settled that a criminal defendant has a Sixth Amendment right to reject appointment of counsel and to conduct his own defense, provided that he makes his choice "knowingly and intelligently." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see also [United States v.] Proctor,* 166 F.3d [396,] 401 [ (1st Cir.1999) ]. Given the potential adverse consequences associated with self-representation, a trial judge must be sure the accused "knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). This court has declined to prescribe a specific warning for the trial court or a formulaic waiver for the criminal defendant. Instead, we have adopted a more contextual inquiry for determining the legitimacy of a defendant's waiver of counsel:

An intelligent waiver does not require that the accused have the skill or knowledge of a lawyer. What is required, we think, is a sense of the magnitude of the undertaking and the disadvantages of self-representation: an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story. In addition, the accused should have a general appreciation of the seriousness of the charge and the penalties he may be exposed to before deciding to take a chance on his own skill.

*Maynard v. Meachum,* 545 F.2d 273, 279 (1st Cir.1976) (internal quotation marks and citations omitted).

In *United States v. Campbell,* 874 F.2d 838, 845 (1st Cir.1989), we enumerated other factors that a court could consider in determining whether there was an intelligent waiver of counsel: "The district court may properly consider, in addition to [the defendant's] background, experience and conduct, such factors as his involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial." (Citations omitted.)

*United States v. Manjarrez,* 306 F.3d 1175, 1179–80 (1st Cir.2002)

The Ninth Circuit's *Akins* focused on the question of whether the defendant had "been 'made aware of the dangers and disadvantages of self representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" 276 F.3d at 1146 (quoting *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The Ninth Circuit stated that "[w]hen no waiver inquiry appears on the record," the court "must look to 'the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused' to determine whether the record as a whole supports a finding that the waiver was knowing and intelligent." *Id.* at 1147 (quoting *United States v. Kimmel,* 672 F.2d 720, 722 (9th Cir.1982) and citing *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019). "In evaluating whether a waiver is valid," the Courts caution, courts must "adopt 'every reasonable presumption against waiver.'" *Id.* (quoting *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019).

In holding that an awareness of the dangers and disadvantages of self-repre-

sentation was constitutionally necessary for misdemeanor defendants at the plea stage, just as it is with those facing felonies, *id.* at 1147, the *Akins* Court noted that potential for federal prosecution under § 922(g)(9) proves how high the stake might be, *id.* at 1148. *See also id.* at 1148 n. 3 (reflecting that an innocent defendant faced with a charge of domestic assault might be unaware of the potential consequence of the conviction and might plead to a misdemeanor for time served simply to move on).

The Court summarized the evidence before it:

> The written waiver of the right to counsel signed by Akins provided only: "My plea of guilty is a knowing and intelligent waiver of my right ... to an attorney, even at public expense, unless I am already represented by one." It went on to explain some of the possible consequences of a guilty plea. At no point, however, did it indicate the dangers and disadvantages of proceeding without counsel. Nor is there evidence that the court provided Akins with any warnings apart from those in the written waiver. Even assuming that Akins read the form before he signed it, there is nothing in the record to indicate that he understood what was printed on the waiver form. Finally, there is no evidence as to Akins' background and conduct that would allow us to conclude that the waiver of counsel was knowing and intelligent despite these deficiencies.

*Id.* at 1149. Distinguishing its case from the Eighth Circuit's *Smith* the *Akin's* panel noted that the defendant before it had never invoked the right to counsel and there was no other indication in the record that he had other reason to understand the usefulness of counsel. *Id.* The Court concluded that the district court had erred in determining that there had been a know-

ing and intelligent waiver with respect to the predicate misdemeanor assault conviction. *Id.*

In contrast, the Eighth Circuit *Smith* panel had evidence before it that the defendant had been appointed counsel for the domestic assault charge but that counsel did not appear for the plea hearing. 171 F.3d at 621. The defendant was asked by the state magistrate if he desired to proceed and, though there was no evidence before the federal court as to what his response was, there was some sort of evidence indicating that the magistrate represented that her general practice would have been to continue the proceeding if the defendant had elected to wait for counsel. *Id.* at 621. The Eighth Circuit noted that the defendant had not claimed to have made a request for a postponement and "offer[ed] no evidence that the magistrate deviated from her normal practice." *Id.* at 621–22. It noted that the fact that the defendant had requested and been appointed his (no-show attorney) demonstrated his "understanding of his right to, and the usefulness of counsel." *Id.* at 622. The federal court also had before it the written waiver of a right to counsel. *Id.* at 622 & n. 3. The Eighth Circuit panel concluded:

> The evidence of Smith's written waiver, coupled with his prior invocation of his right to appointed counsel, and the acceptance of his waiver by the Iowa magistrate who took his plea, sufficiently show, and allow us to conclude as a matter of law, that Smith voluntarily and knowingly waived his right to counsel at the plea hearing for purposes of § 921(a)(33)(B).

*Id.* at 622.

The United States Magistrate Judge in *Pfeifer* had before it the complete plea colloquy in the state trial court:

THE COURT: You're charged with simple assault. Do you have a lawyer?

THE DEFENDANT: No, I don't.

THE COURT: Do you want a lawyer to represent you?

THE DEFENDANT: No, I don't.

THE COURT: Do you understand that you're entitled to have a lawyer during all stages of these proceedings. If you don't have money or property to hire a lawyer, the Court will appoint one for you at county expense. You understand that?

THE DEFENDANT: I understand that.

THE COURT: You want to proceed without a lawyer?

THE DEFENDANT: I want to proceed without a lawyer.

THE COURT: Come right up here and the State's Attorney will read the Information to you.

MR. BARNETT: Let the record reflect I am now filing the Information, that a copy of the Information has been handed to Mr. Pfeifer. (Information read.)

THE COURT: Mr. Pfeifer, you're charged in this Information with simple assault. It charges that you attempted to cause bodily injury to Diane Pfeifer and had the actual ability to cause the injury. It's alleged this occurred on the 5th of May of this year in Haakon County. Do you understand the charge against you?

THE DEFENDANT: Yes, I do.

THE COURT: This is a Class 1 misdemeanor which means the maximum penalty is 12 months in the county jail or a $1,000 fine or both. You understand that?

THE DEFENDANT: Now I do.

. . . . .

THE COURT: Do you have any question about your rights?

THE DEFENDANT: No.

THE COURT: Are you ready to enter your plea?

THE DEFENDANT: Yes, I am.

THE COURT: What is your plea?

THE DEFENDANT: Guilty.

206 F.Supp 2d. at 1006–07.[10] In contrast to *Akins*, *Pfeifer* concluded that in light of the defendant's failure to assert that he was unaware of the nature of the charge, the possible penalties, and the dangers and disadvantages of self-representation it would not presume that the defendant did not have enough information for a knowing and intelligent waiver and concluded that the prior conviction was in the embrace of § 921(a)(33)(B)(i). *Id.* at 1008 n. 3. It also remarked that the defendant had a constitutional right to proceed *pro se,* chose to proceed that way, and the "fact that he was never told and did not know, 17 years ago, that Congress would create a disabling status based on his assault conviction does not make the waiver an unknowing and unintelligent one." *Id.*

### C. Has the United States Generated a Record Sufficient for this Court to Find a Knowing and Intelligent Waiver of the Right to Counsel in Hartsock's Case?

■ The evidence adduced by the United States in this case is sparse. The only

---

**10.** Before asking for the plea that court also asked the defendant, "You were here in the courtroom when I advised Mr. Odom [a different defendant] of his constitutional and statutory rights[?]" *Id.* at 1007. The Magistrate excerpted the Odom colloquy in a foot-note as further support of its conclusion that there was a waiver that comported with the constitution. *Id.* at 1007 n. 2. Pfeifer indicated to the state trial judge that he had heard those rights. *Id.* at 1007.

court record that survives is the docket sheet and a copy of a summons delivered to Hartsock apparently sometime prior to his March 4, 1992, arraignment date for the assault charge. The docket entries do not identify the name of the judge who allegedly advised Hartsock of his rights regarding counsel and a jury, they merely state that he was in court on March 4, 1992 for an arraignment. Judge Clapp testified at a deposition, taken by mutual agreement by the United States and Hartsock in light of the § 921(a)(33)(B)(i) dispute, that he was probably the judge who presided at arraignments that morning, based upon his review of other court documents he executed later that afternoon, but that he had no record evidence that he was even the arraignment judge.

Judge Clapp also testified at his deposition as to the arraignment speech that he customarily delivers to defendants at their initial appearance. He explained that he has been using the same speech since at least 1992. Interestingly enough when Judge Clapp voluntarily offered to deliver that speech during his deposition, a deposition whose purpose was to ascertain whether there had been a knowing and intelligent waiver of counsel, he failed to include anything about the right to counsel at the point he usually includes it in his initial explanation of rights. I mention this not to be critical of Judge Clapp or his performance at the deposition, but merely to note that it is possible on any given day to forget to include some aspect of the statement of rights, including the right to counsel and the right to jury trial. When Judge Clapp realized during his deposition that he had failed to mention the right to counsel, he quickly corrected himself. (Clapp Dep. at 13). The point is that although Judge Clapp's standard speech clearly apprises defendants of their right to counsel and their right to a jury trial, there is absolutely nothing in the record that provides any evidence that Hartsock was advised of his right to counsel on March 4, 1992.

There is however a docket notation that indicates a "jury trial request letter" was sent to the defendant. Judge Clapp explained at his deposition that the practice in 1992 was either to mail the request letter to the defendant or to hand it to him at the clerk's office after his initial appearance in the courtroom. The judge was unsure of the practice on March 4, 1992. Under Maine law it is incumbent upon the defendant to demand a jury trial within twenty-one days of his arraignment or the right to jury trial has been deemed waived. See Me. R.Crim. P. 22(a).

When Hartsock returned to court on June 29, 1992, he changed his plea to guilty and was sentenced by Judge Clapp to forty-eight hours in the county jail and fined $300. Judge Clapp explained at his deposition that before he accepts a guilty plea in a domestic assault case he always again reminds a defendant of his right to counsel and "many times, probably more often than not" (Clapp Dep. at 28), he obtains a written waiver of counsel. The docket entries for June 29 do not reflect that a written waiver of counsel was obtained from the defendant. Judge Clapp further testified that when he accepts a guilty plea without counsel he does not explain to defendants any specific dangers or disadvantages of self representation. (Clapp Dep. at 33). I do not believe that the lack of that explanation is necessarily fatal and that it could still be possible to find an affirmative waiver from other conduct or circumstances, if such conduct or circumstances were shown.

The United States further supplemented this sparse record with its proffer regarding the testimony of Brent McSweyn, agent with the Bureau of Alcohol, Tobacco,

**44**

and Firearms. Because the federal authorities were anticipating charges against Hartsock for sometime prior to the filing of the present charges, McSweyn listened to a tape recording of the June 29, 1992, proceeding prior to its destruction by state authorities. He recalls that when an individual identified on the tape as Willard Hartsock changed his plea to guilty the defendant "waived" his right to a jury trial and his right to counsel. That portion of the United States' proffer is merely conclusory and does not move this analysis forward. According to McSweyn Hartsock indicated on the tape that he had consulted with a lawyer prior to changing his guilty plea and that he was acting pursuant to the attorney's recommendation. The United States does not proffer any further details about that exchange between the court and defendant. For all I know the attorney recommended that Hartsock plead guilty because he could not afford to pay the necessary fees to mount a proper defense. I cannot presume waiver from that reference alone and this record is devoid of any supporting facts.

Thus I conclude in this case that the United States has been unable to show a facially valid intelligent and knowing waiver of counsel. Therefore, there is no reason for the court to place any evidentiary burden of production on the defendant. Were the court to place that burden on the defendant and were he to meet it, the court would necessarily be required to hold an evidentiary hearing to determine credibility issues. In that case, if the court found defendant's evidence to be credible, it would necessarily find that the state court conviction was invalidly imposed without an intelligent and knowing waiver of the right to counsel. By placing this preliminary burden of production on the United States, a result I believe required by the statutory language, I have made no finding that the conviction is con-

stitutionally infirm. I have simply concluded that the United States has not met its burden and that the conviction should be excluded.

### Conclusion

For the foregoing reasons, I **GRANT** the United States' motion *in limine* and **RECOMMEND** that the court order that the conviction offered by the United States in support of its § 921(a)(33)(b)(i) obligation be deemed inadmissible because the United States has failed as a matter of law to generate sufficient evidence that the defendant intelligently and knowingly waived his right to counsel.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 31, 2003.