UNITED STATES of America,
Appellant,

v.

Willard HARTSOCK, Defendant,
Appellee.

No. 03–1609.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 2003.

Decided Oct. 10, 2003.

F. Mark Terison, Senior Litigation Counsel, United States Attorney for the District of Maine, was on brief for Appellant.

Walter F. McKee on brief for Appellee.

Before BOUDIN, Chief Judge, SILER, Chief Circuit Judge,* and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

This case, in a sense, started in 1992 when Willard Hartsock pled guilty in the Somerset Division of the Maine District Court to the misdemeanor domestic assault[1] of his wife Beth Hartsock and was sentenced to 48 hours in the local jail. Hartsock and his wife later divorced and Hartsock moved to North Carolina. Beth[2] apparently remained in Maine. In October of 2000, Beth informed the police that she had received a call from her former husband, during which he "threatened her with regard to firearms" and said he was returning to Maine. After some investigation, the police located Hartsock in Maine and, after he consented to a search, found him in possession of four rifles, two shotguns, and a pistol. As a result, Hartsock was charged with violating a federal statute the ultimate purpose of which is to protect domestic abuse victims from the risk of further violence involving firearms. The statute, 18 U.S.C. § 922(g)(9), makes it unlawful for any person who has been

---

* Of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The only available evidence suggests that Hartsock "hit [his wife] with his hands" and that she "had to go to the hospital because of the injuries she received."

2. The record does not reveal whether Beth Hartsock kept her last name after the divorce. We therefore refer to her only as Beth.

convicted in any court of a "misdemeanor crime of domestic violence" to carry a firearm in or affecting interstate commerce. There is an exception: the statute does not apply if the defendant was convicted for the prior misdemeanor crime of domestic violence without counsel and without having knowingly and intelligently waived counsel. 18 U.S.C. 921(a)(33)(B)(i)(I).

The question raised by this interlocutory appeal, 28 U.S.C. § 1292 (2003), is, in applying that exception, how to allocate the burden of proof that the prior conviction was without counsel or qualifying waiver. The magistrate judge rejected the government's argument that the exception was an affirmative defense on which the defendant bore the burden of proof, and found that the government had not met its burden to show that Hartsock had knowingly and intelligently waived his right to counsel in his 1992 state conviction. *United States v. Hartsock*, 253 F.Supp.2d 24, 25–26 (D.Me. 2003). Adopting the magistrate judge's reasoning, the district court granted the defendant's motion to exclude the record of his domestic assault conviction. That ruling effectively stymied the prosecution, which led to this appeal by the government.

The allocation of the burden of proof for the exception set forth in § 921(a)(33)(B)(i)(I) is an issue of first impression in our court. We reverse the district court's holding and remand. We conclude that the exception is an affirmative defense and not an element of the crime, that the government need only prove the prior conviction, and that the defendant bears the burden of proving he or she is within the exception.

## I.

On August 6, 2002, Willard Hartsock was indicted for violating 18 U.S.C. § 922(g)(9). The indictment charged him with the possession of seven firearms after having been convicted approximately a decade earlier of domestic assault. By the time Hartsock was indicted, Maine authorities had destroyed the plea transcripts of his 1992 domestic assault conviction during routine space-saving procedures. The prosecution filed a motion *in limine* arguing that, under § 921(a)(33)(B)(i)(I), it did not have to prove in the first instance that Hartsock had knowingly and intelligently waived his right to counsel in his earlier conviction. Hartsock denied that he had any burden under the exception and, in line with this position, did not present any evidence on the issue.

The government, which did not have the benefit of the plea transcripts or recording, submitted the deposition testimony of Judge Douglas A. Clapp, who was the only district court judge presiding in Somerset County on the day that Hartsock was convicted in 1992. Although he had no individual recollection of Hartsock's conviction, Judge Clapp testified that he always informs defendants who plead guilty about their right to an attorney, and did so in 1992. The government also presented the affidavit of federal agent Brent McSweyn, who in the nascent stages of the investigation had listened to a tape recording of Hartsock's plea colloquy, and had interviewed Hartsock concerning the conviction. According to McSweyn, the tape showed that Hartsock had waived his right to counsel in the plea colloquy after telling the judge that he had consulted with an attorney. Neither party had the benefit of the federal court's determination as to the allocation of burdens on the exception when they decided what evidence to submit.

In analyzing this motion, the magistrate judge first determined that the issue was a question of law to be decided by the court and that the United States bore the initial

burden to produce evidence on that issue. *Hartsock*, 253 F.Supp.2d at 35, 39. The magistrate judge concluded that the United States "must prove in the first instance not only the existence of the conviction ..., but also in the first instance show the existence of an intelligent and knowing waiver of the right to counsel and a jury trial," and found that the government's evidence did not meet this burden. *Id.* at 38, 44.

The district court adopted in whole the recommended opinion of the magistrate judge. *Id.* at 25. The government appealed.

## II.

### A. Scope of Issues on Appeal

■ On appeal, Hartsock and the United States agree that whether Hartsock knowingly and intelligently waived his right to counsel is a question of law to be resolved by the judge in a Rule 104(a) hearing. We take no position on the proper resolution of this issue other than to rule that Hartsock has waived any argument that he is entitled to submit this issue to a jury by having adopted the stance that it is a preliminary question for the court.[3] Instead, we focus on the point of contention: which party bears the burden of proof on the applicability of the § 921(a)(33)(B)(i)(I) exception.

■ The government bears the initial burden of showing that the defendant

was indeed convicted of a predicate misdemeanor offense, which is indisputably an element of the § 922(g)(9) offense. The government met that burden by introducing a certified copy of Hartsock's conviction for assault and by Hartsock's stipulation that the assault involved domestic violence.

The question here is whether the government or the defendant bears the burden of proving that this domestic assault conviction was within the exception set forth in § 921(a)(33)(B)(i)(I), which provides that:

> (B)(i) A person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] for purposes of this chapter [18 U.S.C. §§ 921 et seq.], unless—
>
> (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case;

This is a matter of statutory interpretation, reviewed de novo. *See United States v. Molak*, 276 F.3d 45, 49 (1st Cir.2002).

### B. Statutory Background

Section 922(g)(9), also known as the Lautenberg Amendment to the Gun Control Act of 1968, was passed in 1996 as part of the Omnibus Consolidated Appropriations Act of 1997. The Amendment, which was adopted by an overwhelming majority of the Senate, was designed to "remedy the disparate treatment between

---

**3.** Although we are aware that all of the courts to have considered this issue have determined that the § 921(a)(33)(B)(i)(I) inquiry is a legal issue to be decided by the judge rather than the jury, *see, e.g., United States v. Bethurum*, 343 F.3d 712 (5th Cir.2003); *United States v. Akins*, 276 F.3d 1141, 1146 (9th Cir.2001); *United States v. Pfeifer*, 206 F.Supp.2d 1002, 1007–08 (D.S.D.2002); *United States v. Thomson*, 134 F.Supp.2d 1227, 1231 (D.Utah 2001), we think that the question is not trivial.

Determining whether there was a waiver of counsel or whether any waiver was knowing and intelligent will, in the absence of documentation, turn on the testimony of witnesses whose credibility will be at stake. Other exceptions, by contrast, may turn on easily provable objective facts. It may also be that a later panel would conclude that our opinion in *United States v. Bartelho*, 71 F.3d 436 (1st Cir.1995), controls.

those convicted of a felony involving domestic assault and those convicted of a misdemeanor involving domestic assault." *United States v. Meade*, 986 F.Supp. 66, 68 (D.Mass.1997). Before the Amendment only those with felony convictions were prohibited from obtaining and possessing firearms. Recognizing that "plea bargains [in domestic violence cases] often result in misdemeanor convictions for what are really felony crimes," 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Feinstein), Congress established with the Lautenberg Amendment a policy of "zero tolerance when it comes to guns and domestic violence." 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg). Observing that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death," 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Murray), Congress hoped that closing this loophole would help to reduce the 150,000 instances of household violence involving firearms that are reported each year. 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg).

When it enacted the Lautenberg Amendment, Congress was clearly aware[4] that at least some of those who would be prosecuted under the statute would not have been represented by counsel in their predicate misdemeanor offense: no constitutionally recognized right to counsel then existed for misdemeanor convictions that did not actually lead to imprisonment. *See Scott v. Illinois*, 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *cf. Alabama v. Shelton*, 535 U.S. 654, 674, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (holding that an indigent defendant is constitutionally entitled to state-provided counsel if he or she receives a suspended sentence of imprisonment). Because a violation of § 922(g)(9) carries a minimum term of imprisonment of ten months, *see* U.S.S.G. § 2K2.1, there was the potential that an indigent defendant uncounseled in a misdemeanor crime of domestic violence would later violate § 922(g)(9) by possessing a firearm and be imprisoned.[5] Although Congress may not have been obliged to act on this concern, *see Lewis v. United States*, 445 U.S. 55, 67, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (approving of using an "uncounseled felony conviction as the basis for imposing a civil firearms disability [that is] enforceable by a criminal sanction"), it nonetheless chose to do so by creating an exception to the Amendment for domestic violence misdemeanor convictions in which the defendant had not been represented by counsel and did not knowingly and intelligently waive the right to counsel.[6] § 921(a)(33)(B)(i)(I).

## C. Statutory Interpretation

■ Analysis starts with the statutory language. *Richardson v. United States*,

---

4. Because the Lautenberg Amendment was ultimately passed as part of a last minute series of congressional maneuvers, *see generally* Eric Andrew Pullen, *Guns, Domestic Violence, Interstate Commerce, and the Lautenberg Amendment*, 39 *S. Tex. L.Rev.* 1029, 1037 (1998), the legislative history concerning the statute is sparse. Indeed, neither the House nor the Senate held hearings on the statute. *Id.* None of the legislative history we examined addresses Congress's specific purpose for enacting § 921(a)(33)(B)(i)(I).

5. This defendant did not fit in that category of concern as he was imprisoned (for forty-eight hours) in 1992 and so had the right to counsel under *Scott*. Our concern, though, is the larger one of understanding what Congress intended as to the universe of potential defendants with predicate misdemeanor convictions.

6. Congress also created an exception for those convicted of a domestic violence misdemeanor without a jury trial. That exception is not at issue here.

526 U.S. 813, 818, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ("When interpreting a statute, we look first to the language."). If the provision is an element of the crime, the burden of proof is on the government. Although § 921(a)(33)(B)(i)(I) does not specify which party bears the burden of proof, the statute as a whole clearly indicates that the provision is an exception to the § 922(g)(9) offense and not, as Hartsock argues, an element of the crime. Subparagraph (A) of § 921(a)(33) defines the term "misdemeanor crime of domestic violence," while subparagraph (B) lays out several instances in which a "person shall not be considered to have been convicted of such an offense for purposes of" the statute. By labeling the knowing and intelligent waiver requirement as one such instance, the statute differentiates it from the constituent elements of a "misdemeanor crime of domestic violence" that are enumerated in the previous subparagraph.

This interpretation is confirmed by the definition of "misdemeanor crime of domestic violence" in subparagraph (A), which begins with, *"Except as provided in subparagraph (C)."* § 921(a)(33)(B)(i) (emphasis added); *see Webster's Third New International Dictionary* 791 (Philip Babcock Gove ed., 3d ed.1993) (defining "exception" as "the act of excepting"). Despite the erroneous cross-reference—the statute does not contain a subparagraph (C)[7]—Congress's intent to label the provisions of subparagraph (B) as exceptions rather than elements of the crime is clear from the face of the statute.[8]

The classification of § 921(a)(33)(B)(i)(I) as an exception, and not an element, is also buttressed by the statute's structure; the provision is not located in either the subparagraph defining the underlying crime (§ 922(g)(9)) or a subparagraph explicitly defining a term used in the underlying crime (e.g. § 921(a)(33)(A)). *See United States v. Gravenmeir,* 121 F.3d 526, 528 (9th Cir.1997) ("The statute in this instance clearly sets out the elements of the offense in one paragraph and the exceptions to the offense in another.").

Finally, Hartsock's interpretation of § 921(a)(33)(B)(i)(I) as an element of § 922(g)(9) would require the government to prove beyond a reasonable doubt to the jury that Hartsock knowingly and intelligently waived his right to counsel. *See Sullivan v. Louisiana,* 508 U.S. 275, 277–78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). This position has been rejected by every court to consider the issue. *See United States v. Bethurum,* 343 F.3d 712, 716 (5th Cir.2003); *United States v. Akins,* 276 F.3d 1141, 1146 (9th Cir.2001); *United States v. Pfeifer,* 206 F.Supp.2d 1002, 1007–08 (D.S.D.2002); *United States v. Thomson,* 134 F.Supp.2d 1227, 1231 (D.Utah 2001).

Courts confronting statutory exceptions such as § 921(a)(33)(B)(i)(I) generally treat them as affirmative defenses to the underlying crime. *See, e.g., United States v. Kloess,* 251 F.3d 941, 945 (11th Cir.2001) (a statutory exception is an affirmative defense because "[i]t appears in a distinct clause, in a different section of the statute"

---

**7.** Because subparagraph (B) does in fact provide for several exceptions to the basic definition, it appears clear that the reference to subparagraph (C) is a typographical error and that it was intended to read "subparagraph (B)." In any case, subparagraph (B) creates exceptions to the phrase "misdemeanor crime of domestic violence" independently of the seemingly faulty cross-reference.

**8.** *Cf. Estate of Kunze v. Comm'r of Internal Revenue,* 233 F.3d 948, 953 (7th Cir.2000) (a clearly erroneous cross-reference "can hardly be construed to have changed the legislative intent ... or to have affected the substantive rights [at stake]").

than the general prohibition); *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir.1997) ("[A] narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element of the offense."). The First Circuit, in particular, has explicitly adopted this classification scheme. *See United States v. Bartelho*, 71 F.3d 436, 440 (1st Cir.1995) ("A claim of restoration of civil rights [was] in the nature of an affirmative defense" when it "serve[d] to narrow the class of prior convictions down to a smaller class of convictions that may serve as predicate convictions"). One major reason for this link between exceptions and affirmative defenses is that it is possible to omit exceptions "from the statute without doing violence to the definition of the offense." *McArthur*, 108 F.3d at 1353. Statutory exceptions are also consistent with the Supreme Court's description of an affirmative defense as one that "does not serve to negative any facts of the crime." *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *United States v. Mayo*, 705 F.2d 62, 75 (2d Cir.1983).

Despite the fact that the statute does not label it as such, we conclude that § 921(a)(33)(B)(i) is an affirmative defense. *See Kloess*, 251 F.3d at 945 ("Congress ... routinely creates exceptions to criminal lia-bility for various offenses .... [that] do not contain language indicating that they are affirmative defenses rather than elements of the offenses. Nevertheless, the courts generally interpret them as affirmative defenses."). *But see United States v. Flower*, 29 F.3d 530, 534 (10th Cir.1994) ("Nothing in the plain language of 922(g)(1) or 921(a)(20) suggests that the 921(a)(20) definition constitutes an affirmative defense.").[9]

■ Next is the question of how to allocate the burden of proving that defense. The term "burden of proof" has been given shifting meanings over the years, *see generally Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), but it is commonly understood to encompass two constituent components: the burden of production and the burden of persuasion. The party bearing the burden of persuasion must lose if the evidence is evenly balanced. The burden of production, in contrast, does not concern the quantum of proof required for a party to ultimately prevail, but instead determines which party must first present evidence sufficient to raise a given issue as pertinent.

■ Generally, with affirmative defenses, the defendant bears at least the burden

---

9. Although the magistrate judge noted that the reasoning of *Bartelho* was "conceivably applicable to the present dispute," *Hartsock*, 253 F.Supp.2d at 27, the judge concluded that "[t]reating the waiver issues relating to the prior conviction as an affirmative defense a la *Bartelho* does not comport well with the statutory framework of § 921(a)(33)(B)(i)." *Id.* at 32. The magistrate judge appears to have rested this conclusion solely on the reasoning of *United States v. Bethurum*, 213 F.Supp.2d 679 (N.D.Tex.2002). The district court in that case held that "[s]ection 921(a)(33)(B)(i) is a part of the offense-defining portion of the offense statute" and thus required the government to prove to the jury and beyond a rea- sonable doubt that the defendant knowingly waived his right to counsel. *Id.* at 686. That decision has recently been overruled by the Fifth Circuit, which determined that the district court erred in treating § 921(a)(33)(B)(i) as an essential element of the crime and held that whether a defendant knowingly and intelligently waived his or her right to counsel is a question for the judge to decide as a matter of law. *See Bethurum*, 343 F.3d at 717. The Fifth Circuit did not address the further issue of which party bears the burden of production. It nonetheless determined that Bethurum had knowingly waived his right to counsel in the predicate offense as a matter of law. *Id.* at 717.

of production. The Supreme Court recognized as much over eighty years ago. *See McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922) ("[I]t is incumbent on one who relies on ... an exception [to a general provision defining the elements of an offense] to set it up and establish it."). Since that time, the First Circuit has consistently adhered to that allocation of responsibility. *See, e.g., Bartelho*, 71 F.3d at 440 ("[T]he defendant has the burden of going forward with sufficient evidence to raise the exception as an issue."); *United States v. Chodor*, 479 F.2d 661, 663 (1st Cir.1973). This allocation of the burden of production has also been explicitly adopted in the context of statutes analogous to § 922(g)(9). *See United States v. Smith*, 981 F.2d 887, 892 (6th Cir.1992) (burden of production is on the defendant for an antique firearms exceptions to 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by anyone sentenced to more than a year in jail); *United States v. Mayo*, 705 F.2d 62, 75–76 (2d Cir.1983) (same). The reasoning of these cases compels the same result here. The district court erred in holding that the government, rather than Hartsock, bore the initial burden of producing evidence regarding § 921(a)(33)(B)(i)(I).

This leaves the question of the burden of persuasion. Labeling something, here § 921(a)(33)(B)(i)(I), an "affirmative defense" does not answer the question of how the burden of persuasion is allocated. That is because the label "affirmative defense" applies to different categories of defenses. *See* 1 LaFave, *Substantive Criminal Law*, § 1.8(c) (1986). One such category is defenses that "negative guilt by cancelling out the existence of some required element of the crime." *Id.* Other categories of affirmative defenses, such as duress, do not negate an element of the crime, but instead provide a justification sufficient to overcome or mitigate

criminal liability. *Id.* Yet a third type of affirmative defense is based on individual exceptions to substantive crimes. *Id.; see Bartelho*, 71 F.3d at 440 (finding that a statutory exception created an affirmative defense). Affirmative defenses in this third category are typified by "an exception or proviso setting forth the defense." LaFave, *supra*, § 1.8(c). It is in this third category of affirmative defenses that § 921(a)(33)(B)(i)(I) properly belongs.

Because § 921(a)(33)(B)(i)(I) is not the type of affirmative defense that negates an element of the offense, the allocation of the burden of persuasion does not implicate any constitutional questions. *Cf. Patterson*, 432 U.S. at 211, 97 S.Ct. 2319 (while it is "constitutionally permissible to provide that various affirmative defenses [are] to be proved by the defendant," the prosecution must "prove beyond a reasonable doubt all of the elements included in the definition of the offense"). There is "a quite divided jurisprudence, without any clear default rule as to how affirmative defenses generally should be treated," *United States v. Dodd*, 225 F.3d 340, 348 (3d Cir.2000), although there "has been a twentieth-century trend toward requiring the government to bear the burden of persuasion on certain affirmative defenses." *Kloess*, 251 F.3d at 947; *see also Dodd*, 225 F.3d at 348–49 & n. 6 (contrasting various circuit holdings to demonstrate the "variety with which courts have treated the burden of persuasion on common-law affirmative defenses"); *United States v. Alvarez*, 755 F.2d 830, 842 n. 12 (11th Cir.1985) (noting that the ultimate burden of persuasion on affirmative defenses "may fall on either the government or the defendant, as determined by statute or court decision").

■ This court has not adopted bright-line rules for allocating the burden of per-

suasion for affirmative defenses. Rather, "[i]t strikes us as good sense to examine both the particular crime and the particular defense at issue in assigning the burden of proof." *United States v. Diaz*, 285 F.3d 92, 97 (1st Cir.2002) (commenting on the allocation of burdens for the defense of justification in a felon-in-possession prosecution). We follow that approach here.[10]

■ We conclude that the defendant rather than the government should bear the burden of persuasion that he or she is within the exception: that is, that the defendant did not have counsel or did not knowingly or intelligently waive the right to counsel in the predicate misdemeanor offense. The primary reason is that the defendant is likely to have significantly more knowledge than the federal prosecutor concerning the circumstances of the predicate misdemeanor offense. As the government notes, while the defendant was presumably in state court and knows what happened when the conviction was entered, the United States will generally not have been a party to the prosecution of the predicate offense. To be sure, some defendants may be ill-equipped to recount the pertinent details of their waiver of counsel, having perhaps forgotten the nature, or even the existence, of the judge's statements regarding the import of counsel. But it is indisputable that a § 922(g)(9) defendant assisted by his con-

stitutionally-guaranteed lawyer in the federal proceeding, will still, as a general rule, be better equipped to dispute the fact of representation or the voluntariness of an earlier waiver of counsel than the federal prosecution. Indeed, this case illustrates the point: while the prosecution has no way of procuring information about the reasons behind Hartsock's 1992 waiver of counsel because of the state court's routine destruction of its records, Hartsock presumably has some idea of why he chose not to have counsel.

Our reasoning is buttressed by the practical fact that the prosecution will often not be able to offer any proof beyond the record of the prior conviction. State courts routinely destroy supporting records. As such, requiring the government to shoulder the burden of persuasion would, as one commentator has said, place "an impossible burden on the prosecution to establish the existence of facts within the special knowledge of the defendant." *See* LaFave, *supra*, § 1.8. The situation might be different if § 922(g)(9) were limited to those who had been convicted of a predicate domestic violence offense within a certain number of years, as state records from recent convictions are less likely to have been destroyed. But because § 922(g)(9) applies to individuals who have been convicted of misdemeanor crimes of domestic violence in the distant past, there

---

**10.** Some courts have suggested that once a defendant has satisfied his or her burden of production on an affirmative defense, then the burden of persuasion shifts back to the government to show by a preponderance of the evidence that the affirmative defense has not been met. *See, e.g., United States v. Jackson*, 57 F.3d 1012, 1016 (11th Cir.1995) ("[W]here affirmative defenses are created through statutory exceptions, the ultimate burden of persuasion remains with the prosecution . . . ."). Other courts have used similar language that "although a defendant may bear the burden of *production* as to an affir-

mative defense . . . the burden of *persuasion* [ ] remains on the government to negate that defense beyond a reasonable doubt, unless a statute affirmatively reallocates that burden of [persuasion] to the defendant." *United States v. Talbott*, 78 F.3d 1183, 1186 (7th Cir.1996) (per curiam). And still others have required the defendant to bear both the burden of production and the burden of persuasion for affirmative defenses. *United States v. Willis*, 38 F.3d 170, 179 (5th Cir.1994); *United States v. Dominguez–Mestas*, 929 F.2d 1379, 1384 (9th Cir.1991).

is no such assurance of readily available state records.

Placing the burden of proof on the defendant to show he is within the exception for prior uncounseled convictions is akin to the usual placement of burdens for post-conviction attacks on prior convictions. As we explained in *United States v. Paleo*, 967 F.2d 7 (1st Cir.1992), the burden of proof is on the defendant who argues a past conviction is unusable because it was not counseled and no valid waiver of counsel was obtained. Although *Paleo* was overruled on other grounds in *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), that reasoning remains valid. Here, too, a defendant who is concerned about the issue of a prior uncounseled conviction or one obtained without valid waiver of counsel has the opportunity to mount a post-conviction challenge in the state court. *See* Me.Rev.Stat. tit. 15, § 2125 (2003). Hartsock chose not to do so, despite the earlier availability of records enabling him to document such a claim. As *Paleo* also noted, the defendant is in the best position to overcome "any skepticism arising out of the lateness of the challenge." *Paleo*, 967 F.2d at 13.

Given the information gap between defendant and prosecutor, the most sensible rule is to place on the defendant the burdens of production and persuasion as to the exception, i.e. the burden of proof. This rule maximizes the likelihood of more accurate factfinding. Placing the burden of persuasion on the prosecution would substantially hamper the government's ability to enforce § 922(g)(9) and to effectuate the statute's mandate that "wife beaters and child abusers should not have guns." 142 Cong. Rec. S8831 (daily ed. July, 25, 1996) (statement of Sen. Lautenberg).

Our conclusion is supported by our decision in *United States v. Bartelho*, where we addressed 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by anyone "convicted in any court of a crime punishable by imprisonment for a term exceeding one year." In that case, we interpreted an exception to this statute for defendants who had been pardoned for the predicate offense or had their civil rights restored. 18 U.S.C. § 921(a)(20). Reasoning that this exception was an affirmative defense on which the defendant had superior information, *Bartelho* held that the defendant bore the burden on the exception and that the government was not required to show the validity of the past conviction. *Bartelho*, 71 F.3d at 440.[11]

### III.

This leaves only the question of the appropriate disposition of this appeal. We reverse. We think it best to remand to the district court so that the district judge himself can determine the issue afresh in light of the allocation of burdens set forth in this opinion and any evidentiary submissions. At the time the parties submitted the evidence to the magistrate judge, they did not know who had what burden, and that uncertainty may have influenced their choice of what evidence to present. We *reverse* and *remand* for further proceedings consistent with this opinion.

---

11. *Bartelho* did not distinguish between the burdens of production and persuasion. We need not address that issue to resolve this case.